THE STATE, EX REL. ELI TAYLOR, v. JAMES CASSIDY AND CHARLES COX, JUSTICES.

Where all the requirements for an appeal from a conviction before two justices, under the bastardy act, have been satisfied, an appeal may be entered in the Quarter Sessions, and that court may rule the two justices to send up the papers in the proceeding.

On *mandamus*.

Argued at February Term, 1876, before Justices DALRIMPLE and REED.

For the relator, *R. S. Jenkins.*

For the defendants, *Hugg.*

The opinion of the court was delivered by

REED, J.  Eli Taylor was apprehended under a warrant issued by James Cassidy, a justice of the peace, upon complaint of one Julia Kerns, under the bastardy act.  He entered

into recognizance, and demanded a trial by jury.   After three trials and three disagreements of the juries empaneled, upon the trial before the fourth jury, there was a conviction.

Thereafter, within the time prescribed by law, (§ 17) said Taylor gave notice of appeal to said Cassidy and Charles Cox, the other justice.   He also tendered the costs of the apprehension, of the trial and of the making the order of affiliation.   He also tendered a bond for the performance of the second condition of section twelve of the act, viz. : for his appearance at the next Court of Quarter Sessions.

There appears a paper purporting to be a transcript under the hands and seals of the two justices setting out these facts, and the application of the attorney of Taylor for the granting of an appeal, and that the two justices declined to take any action in the premises, for the reason that the case had been removed from them to the Circuit Court of the county of Camden, by writ of *certiorari*, and that they had received no legal notice of the disposition of said writ.

Application is made for a writ of *mandamus*, to be directed to the two justices, commanding them to grant the appeal, and send up the papers.

It was urged that the allowance of the *certiorari* removed all the proceedings from the two justices, and that they could not accept the bond and send up the papers.   The idea suggested was, that the use of the writ of *certiorari* superseded the remedy by appeal.   The rule is well settled, that the two remedies by appeal and *certiorari* may be concurrent, and that the granting of the right of appeal by statute, does not deprive the party of his common law writ of *certiorari*, unless the statute which gives the new remedy, in express words takes away the old.   *The King* v. *Reeve et al.*, 1 *Wm. Blackstone* 231.   The proceedings are distinct; they are in different courts, and different grounds for reversal may be urged upon the hearing of each.   *Martin* v. *Thompson*, 5 *Halst.* 142.

Before the act of 1820, proscribing the use of the writ of *certiorari*, the two remedies seem to have been used concurrently to review judgments in justices' courts.

In the case of *White* v. *McCall, Coxe* 93, this court ordered proceedings on *certiorari* to be stayed, until an appeal from the same judgment, at the same term, pending in the Common Pleas, should be determined.

In *Kingly* v. *Gould*, 1 *Halst.* 161, Chief Justice Kirkpatrick recognized the concurrent use of the two remedies as a pre-existing practice; and so in other statutory proceedings.

In the case of *Budd* v. *The Railroad and Transportation Co.*, 2 *Green* 467, this court compelled the Common Pleas of Bergen to proceed upon an appeal from the report of commissioners in assessing damages for lands taken, &c.

In this case, the Common Pleas had directed the proceedings upon appeal to be stayed until a *certiorari*, taken in the same matter, should be determined.

The court considered the two methods of review as distinct, and compelled the Common Pleas to proceed without waiting for the termination of the proceedings on *certiorari*.

In analogous proceedings, therefore, it is perceived that the two remedies have been recognized as concurrent, where there is no statutory prohibition of the use of the common law writ. There are difficulties conceivable in making proper returns to the two appellate courts when both methods of review are invoked simultaneously. In the cases already cited, however, where the proceedings have been in both courts, the matter of return does not seem to have been considered, nor is there any suggestion of a difficulty in securing a proper return to each.

It is not deemed necessary for the disposition of this motion to settle the matter of return.

I think that that matter can be adjusted more intelligently in this instance in another tribunal.

I think that the performance of the conditions upon which, by the statute, an appeal is given, places the party appealing in a position to assert his right in the Sessions. Upon compliance with all the requisites of appeal, the right to enter the appeal in the appellate court becomes complete, and that court then obtains cognizance of the entire proceedings. At

that moment, control of all matters in the cause attaches to the court above. Incident to that control, is the authority to order a return when none has been made, or to complete it where an imperfect return has been transmitted. The order goes not as a prerogative writ, but as a part of the machinery for compelling justice to be done in any cause before the appellate court. *Powell on Appellate Proceedings* 250.

The Court of Chancery in New York, following the practice in the English ecclesiastical courts, can rule a surrogate to send up a transmiss, and compel obedience to the rule by attachment. *Halsey* v. *Van Armyn*, 4 *Paige* 279.

The same power vests in, and has been exercised by all the superior appellate courts.

The practice in the Common Pleas, sitting as a court of appeal for the review of judgments in the justices' court, has been uniform in ruling the justices to send up returns, as well as to amend imperfect transcripts.

This practice was directly recognized by this court in the case of *Stull* v. *Abbott*, 3 *Green* 338.

The rule from this and other cases seems to be, that whenever the appellate court is assured by proof that the preliminaries of an appeal have been complied with by the party, then the appeal may be entered, and the appellate court can, at once, control the disposition of the papers in the cause, whether in the court below or in the court above.

If the appellate court err in making such an order, their action is reviewable by this court.

The proceedings under the bastardy act, so far as relates to appeals, are analogous to those under the justices' act. In this respect, the Common Pleas and Quarter Sessions are of equal dignity as courts of record.

There is no reason why the same power should not be lodged in each as courts of appeal, and that both should not have the authority incident to the superior courts of appeal, to rule the courts below to forward and perfect the record of the causes pending in the appellate tribunal. There is no doubt of the power of this court to issue the prerogative writ

to an inferior court to transmit papers. *High on Extraordinary Remedies*, § 243.

Instances may occur where its use would be valuable. In this instance, in the exercise of the discretion invested in the court upon an application of this kind, we think the writ should not go.

It was said, upon the argument, as a matter of fact, that the *certiorari* in the proceedings had been dismissed. There is no evidence of that fact before us here. If that can be shown to the Sessions, it will relieve the case of any complications arising from the double proceeding for review.

The application for the writ is refused.